first is number 19-1967 Davison v. Sheaffer, Mr. Parkins and Mr. Manning. Mr. Parkins? Good afternoon, Your Honor, and may it please the Court, my name is Kurt Parkins and I represent the appellant in this matter, David Davison. I would request five minutes for rebuttal at this time. Not a problem at all, go right ahead. Thank you, Your Honor. In beginning, as a factual matter, this case is not too complex. It boils down to whether or not the district court in this case, in ruling on the defendant's motion for summary judgment, usurped the role left for the fact finder or the jury in determining, in this false arrest, false imprisonment case, whether probable cause existed to detain Mr. Davison. When they first detained him, can you outline all of the exculpatory evidence that you believe the parole officers knew at that point? Sure, I would. And at that point, during the time of the first detention on March 25th of 2015, it was not that specifically exculpatory evidence existed, but that a reasonable officer would not have relied on the word of this purported victim alone. And I will go through the list of facts that were elicited to support that position. Specifically, I think most importantly, the victim, despite being asked, or I would say the purported victim, despite being asked to do so, refused to render her complaint to writing and sign, verifying that her statement was accurate. And the officers and the defendants deposed specifically noted that that was unusual. And they noted a number of bizarre instances in this case that tended to indicate that this witness was not credible. First, the complaining witness, in what would be a rape investigation, did not dial 911, did not go to the police. She called her complaint into the parole officer of the appellant, which was extremely unusual. And the parole officers have noted that this tends to happen in cases where somebody's just trying to get somebody in trouble or jam them up when they're on parole. So, Mr. Parkins, are you suggesting that this really goes to the reliability of the complaining witness as opposed to what we would typically consider exculpatory evidence? In the first half, yes, Your Honor, it does. So, the initial arrest takes place on March 25th, and the exculpatory evidence comes on March 31st. So, our position is that both the arrest and the continued detention after the exculpatory evidence was received were unconstitutional. Obviously, the laws that exist is that the word of a complaining victim is generally sufficient to establish probable cause. But this is one of the cases that doesn't fall under that general rule. And specifically, as the case law indicates, there is not probable cause based on the word of a purported victim if there was evidence that that victim was unreliable or if there were evidence or if the officers did not believe that witness's statement. And there's evidence of both. And the unreliability comes from the bizarre nature of what happened here, the complaining call to the PO rather than the police, the five-day wait to report, the reluctance of the witness to speak to officers, the fact that officers in probation noted that the witness was evasive, that she would not tell them the whole story in their words, that she refused to write it down and sign to verify its truthfulness, that their interview only lasted a half an hour, that she gave conflicting stories, that there was no physical evidence, that she had six prior crim and falsi convictions. All of these facts existed. Let me ask this question. You've got parole officers, and obviously some of these things happen with respect to them, but they turn it over to Haley. They turn it over to the officers that would be in charge of this investigation. And as soon as Haley gets it, within a matter of days, he says, yeah, there are red flags. He checked into it further. He saw the convictions for false statements in the past. They saw the video, etc. And Haley, within one week, says, nope, there's nothing there. I'm not going forward on this. And what more could the parole officers have done? What should we do here? And he says, well, I'm not comfortable making an arrest. So that indicates from both parties that there's some belief that this woman is not telling the truth and needs to be investigated further. And the confluence of all those facts, I think, in totality, is really something for the jury to determine, one, whether the officers knew that this witness was unreliable, and whether they didn't believe her. Because if so, then there was not probable cause. Go ahead. The question is this. Is there a distinction to be made between what a parole officer needs to lodge a detainer and a police officer needs to issue an arrest warrant? He was detained not on an arrest warrant. He was detained on a parole detainer, correct? That's correct. But the sole basis – it was not a technical parole issue. The sole basis for the detainer and the allegation on the detainer was that he sexually assaulted this complaining witness. So there was no other allegation, or they weren't moving forward on any other allegation of attack or anything of that matter. Right. So then we would review it under the same matrix. I believe so. All right. And what I would note is you have these number of things that all indicate that this witness is not credible. And if you're weighing – I think I provided the court with at least 10 facts to indicate that her reliability was in doubt. But if you're weighing those sorts of issues and that many facts, certainly you're in the realm where this is a factual determination to be determined by a jury. And then if you move forward and you look into what happens afterwards, you get circumstantial evidence into the state of mind of these parole officers. Because his attorney, Mr. Davison's attorney, immediately goes to them. I believe the testimony was on the very day. And then he has exculpatory pictures and text messages that tend to prove his client's innocence and negate probable cause. And the officer's – Mr. Taylor says to him, I'm not interested in that. He won't even look at it. That's evidence of his mens rea. But what is most important, and the testimony is that this occurred at the latest on March 31 of 2015, is that on that day they were provided with the video, which everybody agrees – it's uncontroverted – that the video was completely exonerated. Once a detainer has been lodged, they have to go to the court to release the individual, correct? They can't release him. The court has to release him. They can go to the judge and say, hey, we're withdrawing the detainer, but they can't withdraw a detainer without judicial intervention. That's correct, isn't it? I believe so, Judge, but the evidence – I don't believe the evidence exists to show that they did that in this case. Well, that's what I'm asking. The record's not clear. And I would agree – So the record's not clear as to what happened at that point. When did they go to the court? We don't know that, correct? Correct. Mr. Taylor did pass, and that's why there isn't a state defendant remaining. And what I would note is there's generally – and one of the things that's cited in the appellee's brief a lot is that there's no duty to continue to investigate, but there is a duty not to close your eyes to exculpatory evidence that you're aware of, which is what we're claiming happened in this case. Agreed. We don't know – based on the record as I reviewed it, there's no evidence to suggest – there's no evidence to suggest what happened at this point. We don't know if this was judicial delay or if the officers just didn't go to the court promptly. We don't have that data. That's back to something that we're unaware of. Correct. So if they went to a judge and said, hey, we want you to withdraw the detainer, at that point, they're good, right? But I think – perhaps, but I think the issue in this case, too, is – and one of the things you look at in the other cases that were cited by appellees is when you're talking about the delay and release, it's generally talking about cases where you have somebody just being paroled. This is a case where you have somebody actually innocent being continued to be held, but on that point, I would reserve the remainder of my time for rebuttal. Okay, thank you. Judge Hardiman, do you have any questions? Thank you. Not at this time, Judge Emmer. Okay, thank you. Mr. Manning. Good afternoon, Your Honors. May it please the Court, my name is John Manning. I represent the appellees in this matter. The decision of this court should be affirmed that there was probable cause in this case, clearly, at the time of March 25th. One of the things the counsel said was talking about false statements or things of that nature. There was nothing in here as far as anything false or that the agents knew was false or the police officer knew was false on March 25th. In fact, the testimony of Detective Haley was that there was no, ever, any doubt that a rape happened that day. In fact, that was what the agent, Agent Schafer, had said as well. It wasn't until afterwards, a week afterwards, was there any kind of information that came forth that might have caused Detective Haley to think that there may have been some issue. Again, this was a probation violation. Wait a minute. Haley was not willing to arrest. He was not willing to arrest based on her statement alone, correct? That is correct, Your Honor. And he expressed some reservations about her credibility and her reliability, correct? I don't know. My understanding from looking at the depositions is that he was not comfortable in arresting her at that time. So isn't reliability something that we have to factor into the equation of the probable cause analysis? It's a factual issue? Well, again, the fact of the matter is whether or not there was probable cause at that time. The issue was no one doubted Ms. Kennedy at that time, just because Mr. Haley, or Detective Haley, wanted to do more investigation. Everybody doubted Mrs. Kennedy at that time. Not on March 25th. I don't believe the record supports that. And the fact of the matter is this was a probation violation. Whether or not, I'm sorry, Your Honor, whether or not there was enough probable cause for a probation violation. Again, we may not have known Mrs. Kennedy at that time, but we did know Mr. Davison. Mr. Davison was on probation for an aggravated assault and for assaulting a police officer during a SWAT team extraction. We did know that at that point. And we also knew that the sentencing judge, Judge Gray, said there would be zero tolerance for any violation of the conditions of probation. And the defendant is to be immediately detained upon violation pending the Gagnon hearing. That was a court order from the judge, that he be immediately detained on any kind of probation violation. So we were, in essence, following that court order as long as we had probable cause. One could also argue that the standard really should be reasonable suspicion for a probation violation as well. The Fourth Circuit has noted this as such, as well as in the Jones v. Chandra Suen case. In looking at United States v. Knights, which says that the standard for a probation violation, for a search for a probation violation, is reasonable suspicion. But in any event, I think that the courts noted that we had probable cause. And there really wasn't anything to doubt that on that March 25th date. Well, didn't Haley tell the parole officers that he was not willing to arrest because he did not have any evidence, only a verbal statement? You can find that at page 89. And he needed to do more because he was reluctant to arrest and lock up an innocent man. Well, Detective Haley had a much higher standard, I think, what he was saying as far as whether or not to arrest somebody. But that doesn't mean that the agents here didn't have probable cause. We say it's a statement, but it was a very detailed verbal statement. It said that Mr. Davidson broke into her apartment on March 20th, that he was wearing a Harley-Davidson jacket, had a tan sweater on, that she even said what kind of lesions he had on his chest on that date and time, and that there were prior meetings that happened where Mr. Davidson had groped her at a state park a week prior to. All that information was there as well. Now, we did have a written statement, and that written statement, although it didn't have all the information that was in the verbal statement that is part of the affidavit of probable cause that Detective Haley had, which is in the record. But the fact of the matter is that the written statement said that she was sexually assaulted, and most importantly, that she was in fear of her life because Mr. Davidson had threatened her and her children, which is another reason why there had to be some immediacy on behalf of the probation, the parole agents in this case, for probation violation. Let's assume you're right, but then come, you have 13 days of detention, and on the 7th day, Haley advises Taylor, the parole officer, that he would not bring charges against Davidson. And Haley ultimately, in fact, charged Kennedy with making false reports to law enforcement authorities, and she pled guilty. Yes, sir. So, why the 6-7 day delay after that? Well, again, the information was relayed from Detective Haley to Agent Schaefer. Agent Schaefer was not Davidson's supervising agent. Schaefer had to tell Agent Taylor. Agent Taylor would also have to get authority from the district director, Robert Jones, to withdraw. And there also had to be, which was noted in the record, that the Lackawanna County Probation would have to make the final decision because what happens, although we don't have the testament of Agent Taylor because of his passing, what happens in the procedure, and this is part of our procedure, which is part of the record, I think on page 48 of the joint record, shows that we only have a detainer on this individual for 13 days, and after which we withdraw the detainer. In fact, pursuant to our procedure, we're supposed to let the court know that we're only going to have the detainer on there for 13 days, and then they have to, in fact, make a decision whether the court wants to put their own detainer on there for the Gagnon hearing. What was the technical parole violation? The technical parole violation in this case was assault of behavior. Now, I know that the notice charge said basically that Mr. Davison sexually assaulted Ms. Kennedy, but in all honesty, assault of behavior could be something even more such than just a physical assault. It could be reasonable apprehension of any kind of physical assault. It could be threats, and the written statement does have at least verbal threats in there, whereby saying that he was going to kill her and her children. That's what the agents relied on, and that was the statement that was given. So come back to me to April 1. Amy comes in and he says, there is no there there with respect to her. In fact, it's so bad, I'm going to arrest her. So in effect, you don't know if there is anything, first of all, against him. I'm having trouble hearing you, Your Honor. I apologize. The one thing you don't know for sure is that there is no rape charge against him. And then assault of behavior, Haley is saying, I don't see anything here. So if you follow what the Supreme Court in the Manuel decision essentially says, is it guarantees a fair and reliable determination of probable cause as a condition for significant pretrial restraint. And here there's been a very reliable determination by Haley of no probable cause. And so what I can't get over is the next six, actually probably about six and a half days that they kept him. And it sounds like what you're saying is, well, there's things they had to go through, the hoops they had to go through to let him go, but it takes six and a half days to do that? I will say this, Your Honor. He did receive potentially exculpatory evidence in his mind that declared Mr. Davidson innocent, in Detective Haley's mind. Again, if you look at the record, Detective Haley kept investigating. He still went back on April 13th to talk to Ms. Kennedy. He didn't just charge Ms. Kennedy with unsworn falsification on April 1st or April 2nd. He waited until May 22nd to make that determination. He had to go back to Ms. Kennedy. But what he said was there's often been charges against Davis on April 1st. That's what he said. But my position would be that the agents would have to make their own specific independent determination. That's what I think Judge Saperito, the lower court, also recognized, that we'd have to make our own independent decision. Isn't there evidence that the agents refused to even consider the exculpatory evidence when they were presented with it? Well, there was a statement. Yes, Your Honor. There was a statement that Attorney Corey told Agent Taylor. Now, Agent Taylor is not here to say whether that happened or did not happen. But, again, there's no duty to investigate that information according to this court's case law under the Waters case. You said there's no duty to investigate. In Waters' case, which, again, was an unreported decision from, I believe, 2017, Waters v. Cheltenham Township, there was a surveillance video that was noted a week afterwards. And this court still said that there's still no duty to investigate. And I think this court, as well as in the Wilson v. Russo case, noted they said they did not make that decision as of yet, but this court has never said there is a duty to investigate specifically, I don't believe. Is there a difference between investigating and ignoring exculpatory evidence? It was brought to them. They had to do no investigation. It was brought to them, served to them, and they just ignored it. Well, I think, Your Honor, the issue there, again, is we were—one could argue we were following a court order. We were told to immediately detain him pending the Gagnon hearing. If we were to do that and not wait for that Gagnon hearing, again, which a Gagnon hearing is typically, you know, within that 14-day period or, you know, pursuant to our procedure, we would have dropped the detainer and let the court put their detainer on within 14 days. We wanted to let the court make that decision. You know, looking at that information, we would have to look at the exculpatory evidence, but we'd also have to look at the inculpatory evidence from Ms. Kennedy, which was a very detailed statement, extremely detailed. And we also—as, you know, there was some things about her having a criminal falsity record. Again, that was something that Detective Haley said he wasn't even sure when he actually looked up the criminal falsity record of Ms. Kennedy. And, again, he didn't make that determination to charge her with unsworn falsification until May 22nd. For me, the issue is, is there—I'm not saying you win or you lose. Is there a genuine issue of material fact as to whether it was reasonable to take almost a week to release Davison after the parole officers knew that there were going to be no charges brought against him? And I simply don't know the answer, and so it seems to me that that's an issue that a jury should decide. I would say this, Your Honor. Probation is much different than a police issue of probable cause because a court, at least a court, a sentencing court, has to determine whether a probation was even effective on that issue. That goes back to the Daisy Cates—the Pennsylvania Supreme Court's case in Daisy Cates to determine whether probation is even effective. So they would have to determine, you know, whether or not, you know, the exculpatory evidence— you know, whether or not the statement that Ms. Kennedy gave was threatening or not threatening. So that would be something that the court, I think, the sentencing court would have to look at first. Well, let me ask you, is the record sufficiently developed, sufficiently enough developed, for us to determine what happened April 1st of the release date? What we know at that time is that Agent—Detective Haley told Agent Schaefer that he wasn't going to file criminal charges. And you don't know what the parole agents did with respect to notifying the court, correct? What we know is what Agent Schaefer said would typically happen, so we don't know the specifics of that. What typically happens is different than what happened in this case. We do not know what happened in this case, correct? No, we do not know what happened. But I—no, but the fact of the matter is, is that we would still have to make that independent determination as to whether or not there was enough for a—to detain Mr. Davison for probation violation. As evidenced by our procedure that says that we would lift the warrant after 14 days. And again, I don't—I think this—other courts have said that six days is not unreasonable. The fact of the matter is, is that on April 1st is when we found out that Detective Haley said he was not going to file the charges. We let him go on April 7th, which was a Tuesday. April 1st was a Wednesday, so he had an intervening weekend on that. And that's six days afterwards that that determination was made. And the determination whether or not to lodge the warrant is made by the district director. And that determination, again, would have to—to release—would have to be made by him as well. There is a Seventh Circuit case called Bevere, B-E-V-I-E-R, at 806 F. Second. I think it's around page 120-something. And there was a detainment of parents for three days after it became clear that they had not committed child neglect. And the court held that that constituted detention without probable cause in violation of the Fourth Amendment. Here we have six days. Why shouldn't, again, a jury decide yea or nay as to whether the reasons for keeping him the additional six days are a detention without probable cause in violation of the Fourth Amendment? Well, I think the Bevere case had to do with more that the police officer in that case—again, this is a police officer on probable cause— didn't check to see why the children there had diaper rashes or why the children were sunburned. And just based on that said we're finding some kind of child abuse, which I think Bevere had to do with. But in this case, the guy that's going to—he's the head investigator of the police, and he's saying it ain't going to happen. I am not doing anything with respect to him. Okay. First. And he is making a determination as to whether or not he's going to charge Mr. Davison with rape. And again, we're making a determination as to whether or not there's assaultive behavior. We're also making a determination—those verbal threats could in fact have been part of that assaultive behavior as well, because it's more than just the issue of the sexual assault. So I think it's a broader issue as well that had to really potentially at least go to the court or at least let the court, in this case the Lackawanna County Probation Department, make that determination. It seems to be a bit backwards. The claim was—and I can understand why pro-officers post-March 25th would let Haley do the investigating. And he does it, and he comes back within a week. And so you would say, okay, I don't have to necessarily do any investigating. But when he tells you there isn't anything there, all of a sudden you think now there's a duty of them to do investigating? I mean, if you don't want to do investigating beforehand, why would you want to do investigating afterwards? Well, again, I don't think there was a duty. I think what I'm saying is, Your Honor, I apologize if I misspoke. I'm sorry. That could have been something that was still assaultive behavior that would have been determined by the sentencing court as to whether or not at that Gagnon 1 hearing. I think that's what I'm saying. You might have wanted to do that before April 1, right? It may not be rape, but nonetheless, we still think there's an issue or not an issue with respect to assaultive behavior. Well, again, that was something that could have been assaultive behavior. But the fact is that the fact of the matter is we sent the transmittal letter on March 27 to the court. And just based on the written statement alone, that could have been assaultive behavior. And again, the six-day delay is something, at least under a qualified immunity analysis, we should still get the benefit of the fact that the courts have said the six-day delay is not unreasonable. Although the district court held here that the qualified immunity was waived or, in effect, forfeited by not being brought up. Well, I would respond that we put that in our firm of defenses on the original complaint. On our amended complaint, we raised qualified immunity. They were well aware that that was something that we were raising. But also, under the local rules, I think you can file a reply brief, but then the court would have to order any kind of surreply brief. The court could have ordered that surreply brief or allowed for a surreply brief. You only brought it up in your reply brief. I did. I'm saying the lower court could have ordered the appellants to file a surreply brief to address that issue. All right. Let me just go back real briefly, if I can, to the threshold issue. Is reliability baked into the equation on probable cause? Does the court have to – is probability a factual – I mean, reliability a factual determination? Well, I think it could be, but I don't think that's really an issue here. When you look at the Wilson case, Wilson v. Russo, if you have something that's completely out of line, when you say two witnesses say they're seven feet tall, but the police officer knows the individual's five feet tall, that's obviously not going to be reliable, that determination. But here, you know, there was nothing there to say that she was not reliable, Ms. Kennedy. And even Detective Haley said on March 25th, we had a rape here. There was no question there was a rape that happened on that day. And that was prior to the arrest. I'm sorry, Your Honor. Thank you. All right. Thank you, Your Honor. Do you have any questions? Just one. Go ahead. Counsel, you mentioned you qualified immunity in your reply brief, and you said the court could have ordered a surreply, but you could have asserted qualified immunity in your opening brief, correct? That's correct, Your Honor. And you didn't, right? That's correct. Okay. Thank you very much. We'll hear from Mr. Parkins. Thank you, Your Honor. I would begin by noting that the quibbling about assaultive behavior versus a rape allegation is really neither here nor there. In this case, it's about one incident, one reported incident, and whether or not there was probable cause that that incident occurred. This parsing of words, we're going to call it assaultive behavior after the fact, it really loses sight of the focus of this matter, and that's whether Ms. Kendi's statement gave rise to probable cause. Now, Attorney Manning indicated that it maybe should be reasonable suspicion. It is in the Fourth Circuit. In the Third Circuit, the case law is clear that it's probable cause, and that underlying determination is based. Let me ask you this question, though. Sure. Isn't it a fact that someone can be guilty of assault but not guilty of rape? That's a fact, Your Honor, but that was not... Let me ask a follow-up then. If Detective Haley concluded that he was not going to bring charges against Davison for rape, that doesn't answer the question whether Haley or he or Schaefer might have later determined that although Davison was not chargeable with rape, he still might have been chargeable with assaultive behavior, correct? Hypothetically, that's a possibility, but in this case, that's not what they did. They didn't do that investigation, and they didn't continue to investigate it because this was all based upon the word of one person. And when they had the exonerating evidence that completely exonerated him and the earlier exculpatory evidence, they couldn't proceed forward on this woman's word. The fact of the matter is... What's your response to Mr. Manning's statement that as of April 13, Haley was continuing to investigate Kennedy for potential false statements? He was, and that's exactly what it was. It was continuing to investigate Kennedy. The investigation into David Davison was over, right? That was over at the latest, April 1. This is a separate investigation into her, and what it appears to be is that he wanted to give her a chance to make a statement before he filed formal charges against her. Right? Right. Which we know she's guilty because she's pled guilty. Doesn't that prove that with respect to Kennedy, Haley was still trying to get to the bottom of things? In other words, the factual picture was not yet completely clear as of April 13, and Mr. Davison was already released from custody before that, right? I don't believe that, Zachary, Your Honor. I believe that the picture was clear on the 1st, and Mr. Haley testified to it, and the other witnesses that indicated in their depositions. The video that was produced was... As of the 1st, the picture is clear to the extent that we know that Haley has concluded that Davison is not chargeable with rape because there's an exculpatory video that renders him not chargeable with rape. Correct? Correct. Okay. So then the next step becomes, okay, the guy didn't commit a rape, but we've got to get to the bottom of what really happened because we know that Kennedy was not truthful to us when she made her initial complaint. Now we've got to find out what the truth is, and the truth could be somewhere and anywhere from Davison doing absolutely nothing to Kennedy and perhaps Davison committing assaultive behavior. That's still all in play as of April 1, isn't it? I don't think you can make that out on this purported victim's word at that point because the information they have at that point is that this woman made an allegation of rape and it was absolutely definitively a lie. So you can't make out and you shouldn't continue to hold a person on the word of somebody that's proven to be a liar. You know, you shouldn't do it in the beginning when you have somebody that's unreliable. So a woman who is hit, battered by a man, and falsely alleges that the man actually raped her when in fact he only battered her, you're saying that he can't be deemed guilty of battery or assault. Well, I think at that time, if that is all they have to go on when you have definitive evidence of her lying, I don't think her word alone is probable cause. Now if they had bruises and other things, obviously you may have a different story, but if you're talking on the word of this person alone, and when you go back to the 25th, there was evidence that this witness was unreliable, and as the court noted, reliability is, and it's clear from the case law, reliability is a factor in determining probable cause, and probable cause is generally a question that should be left up to a jury. So we have presented evidence that this witness was unreliable at the time she made the statements, and that the officers knew it. At that point, that becomes a question for the jury to weigh. Whether or not they did believe her, and whether or not they felt she was reliable, is a jury question. And I would like to note just two other things briefly. The six-day delay, when Attorney Manning discusses these cases that say a six-day delay is justifiable, they're completely different than the case that's before the court today. Those are cases where you have somebody that's on parole and has been found to be guilty of a parole violation and are being re-paroled, and they issue a parole order and it takes a couple days to be released. They are not cases where you completely lack probable cause and where you have an innocent man sitting behind bars. They're just completely different scenarios, and I think the case out of the Seventh Circuit that the court cited is really more on point to that issue. And they really want to have it both ways. They say, we get to make an independent determination of probable cause, is what Mr. Manning said, and yet at the same time they say, you know, we have no duty to investigate. We're not going to do anything. We can ignore exculpatory evidence. Now, he indicated that there's a question as to what the law is on that. I don't know how the law could be if somebody puts down on your desk clearly exonerating evidence, how you could constitutionally ignore it, which is what was done in this case. Was there anything that was put in the record as to what the parole officers did post for April 1 to investigate for parole violations? Well, I think, Your Honor, there's evidence in which a jury can infer that they did not ask the court to release him because they turned over as part of discovery. I'm saying was there any evidence put in by the parole officers of the actual work that they did post April 1 to investigate either assaultive behavior or parole violations? No. What they did turn over was, and as Attorney Manning himself noted in his argument, they turned over paperwork transmitted to the court on March 27 that indicated that they had detained this guy. So the transmittals they make to the court and the correspondence are part of the file, but none of that exists post April 1, right? So they didn't provide any evidence that they went to the court. And I think the final thing that I would note is, you know, Attorney Manning made a lot of reference to this court order at the Gagnon that he used to be detained and that there will be zero tolerance and that he was incarcerated on an ag-assaultable police officer. What the underlying offense was in that court order, really, are irrelevant to the issue here. The court order was there's going to be zero tolerance for parole violations, but that's assuming you have probable cause that a probation violation existed. That's the initial hurdle you have to get over, and you don't get over that hurdle here to even get to judge Brace's decision. Okay. Thank you very much. Thank you to both counsel for well-presented arguments, and we'll take the matter under advisement.